IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Dennis Faulkenberry, | ) | C/A No.: 1:11-594-JMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This appeal from a denial of social security benefits is before the court for a

Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a)

(D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to

obtain judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). The two

issues before the court are whether the Commissioner's findings of fact are supported by

substantial evidence and whether he applied the proper legal standards. For the reasons

that follow, the undersigned recommends that the Commissioner's decision be reversed

and remanded for further proceedings as set forth herein.

I.      Relevant Background

        A.      Procedural History

        On August 27, 2007, Plaintiff filed for Social Security Disability benefits under

the Social Security Act ("the Act"), 42 U.S.C. §§ 401–433, 1381–1383c. Tr. at 120–27.

In his application, he alleged his disability began on October 3, 2003. Tr. at 120. His

application was denied initially and upon reconsideration.  Tr. at 62–66.  On September

2, 2009, Plaintiff had a hearing before an Administrative Law Judge ("ALJ"), at which

Plaintiff appeared without representation.  Tr. at 32–58.  The ALJ issued an unfavorable

decision on October 30, 2009, finding that Plaintiff was not disabled within the meaning

of the Act.  Tr. at 19–31.  Subsequently, the Appeals Council denied Plaintiff's request

for review, making the ALJ's decision the final decision of the Commissioner for

purposes of judicial review.  Tr. at 1.  Thereafter, Plaintiff brought this action seeking

judicial review of the Commissioner's decision in a complaint filed on March 3, 2011.

[Entry #1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 47 years old when he alleges his disability began.  Tr. at 36.  He has

a GED.  Tr. at 38.  His past relevant work ("PRW") was as a mechanic for textile

machinery.  Tr. at 41.  Plaintiff injured his back at work in 1998.  *Id.*  He returned to

work following surgery and continued to work until October 3, 2003, when he allegedly

reinjured himself.  Tr. at 120, 276.

2.    Medical History

Michael Getter, M.D., operated on Plaintiff after his 1998 back injury and treated

Plaintiff after the 2003 back injury for pain management with OxyContin from 2004 to

2007.  Tr. at 228–40.  In February 2005, Dr. Getter noted Plaintiff had "failed back

syndrome."  Tr. at 233.  In April 2005, Dr. Getter stated that Plaintiff was "actually well

2

maintained on his OxyContin" and saw no reason to change Plaintiff's medicine regimen. Tr. at 234.

On June 8, 2005, Dr. Getter indicated Plaintiff had been terminated by his employer "for a reason unknown to me in the middle of his treatment for his back problem that he has had." Tr. at 235. Dr. Getter opined Plaintiff was "not doing well at all with regards to his pain and his pain medicine is about all he has to keep him up and going and he is in no condition to do any type of work." *Id.*

On March 17, 2006, Dr. Getter noted Plaintiff could not afford to pay for his OxyContin so was taking Norco and getting whatever relief he could with that. Tr. at 240. Physical examinations in April and November 2005, in May 2006, and in January 2007 showed that Plaintiff had a straight spine and demonstrated full range of motion in his hips, knees, and ankles, with full motor strength in all groups tested. Tr. at 234, 238, 241, 243. A physical examination in October 2006 revealed tenderness "everywhere you touch in his back." Tr. at 242. Dr. Getter consistently diagnosed Plaintiff with mechanical low back pain and failed back syndrome. Tr. at 241–43.

Plaintiff received sporadic mental health treatment from Springs Memorial Hospital and Piedmont Medical Center in 2006. Tr. at 197–217, 280–312. In October 2006, Plaintiff was admitted to Springs Memorial Hospital for suicidal ideation with a plan after placing a gun in his mouth and subsequently firing off one shot into the air. Tr. at 210. In November 2006, Plaintiff underwent a mental health evaluation at Piedmont Medical Center for concerns of agitation and trying to jump out of a car. Tr. at 302, 307.

3

He was evaluated and discharged the following day with a diagnosis of depression.  Tr. at 290.

On October 11, 2007, Dr. Billy Blakeney, one of Plaintiff's primary treaters, completed a questionnaire indicating that Plaintiff had mental diagnoses of depression and anxiety, and that he was prescribed medications for these conditions including Amitrityline and Xanax.  Tr. at 273.  Dr. Blakeney indicated that the medications helped Plaintiff and that psychiatric care had not been recommended because the patient was uninsured.  *Id.*  Dr. Blakeney further noted that Plaintiff was oriented to time, had slowed thought processes, appropriate thought content, flat/depressed mood/affect, poor to adequate attention/concentration, poor to adequate memory, and was capable of managing his own funds.  *Id.*

Catawba Mental Health Center provided mental evaluation and treatment to Plaintiff from 2006 to 2007 and 2009 to 2010.  Tr. at 244–54, 394–412.  He was diagnosed with recurrent major depressive disorder, dysthymia, generalized anxiety disorder, opiate dependence, soma abuse, benzodiazepine abuse, and somnolence; treatment included various medications and individual therapy on an outpatient basis.  *Id.*  A record dated December 20, 2006 notes Plaintiff had been manic depressive for a good while and had been picked up by police and hospitalized as a result.  Tr. at 167.  The record further notes that Plaintiff would not go to "mental health."  *Id.*

On October 29, 2007, Plaintiff underwent a consultative examination and x-rays by Sushil K. Das, M.D. scheduled by the Office of Disability Determination.  Tr. at 274–

79.   Physical examination showed that he had normal range of motion in all body systems, normal grip strength, and no muscle weakness or atrophy.  Tr. at 274–275, 277. X-rays of the lumbar spine showed Plaintiff's alignment was anatomically correct and that Plaintiff had underlying degenerative changes in his lumbar spine.  Tr. at 279. Plaintiff stated that he could stand for up to an hour and sit for up to two hours before he needed to move around.  Tr. at 277.  He drove himself to the appointment and stated he could lift, carry, and handle objects that weighed up to 20 pounds.  *Id.*  Dr. Das believed Plaintiff was capable of lifting and carrying more than that.  *Id.*  Dr. Das acknowledged Plaintiff had some pain and tenderness in his back, but overall did not believe Plaintiff's pain was significant enough to prevent Plaintiff from doing normal physical activity.  Tr. at 278.

On November 8, 2007, agency consultant Robert Kukla completed a Physical Residual Functional Capacity ("RFC") Assessment of Plaintiff.   Mr. Kukla noted Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and stand, walk, or sit about 6 hours in an 8 hour workday.  Tr. at 314–21.  A follow-up RFC Assessment on December 9, 2008 noted the same restrictions.  Tr. at 352–59.

Chad Ritterspach, Psy.D. performed a psychological examination of Plaintiff on December 1, 2007.  Tr. at 326–28.  After examining Plaintiff, he diagnosed Plaintiff with

an adjustment disorder with depressed mood and a GAF[1] score of 58[2]. Tr. at 327. Dr. Ritterspach observed no signs of malingering and noted Plaintiff presented with depressed mood, low motivation, low energy, social avoidance, and disturbance of appetite. Tr. at 328. Dr. Ritterspach opined that despite his depression, Plaintiff could understand, retain, and follow directions and had some trouble sustaining the attention to perform simple, repetitive tasks. Tr. at 328. He had an average ability to relate to others and he could tolerate the mental stress and pressures associated with day-to-day work if his physical problems subsided. *Id.*

On December 6, 2007, consultant Lisa Klohn completed a Psychiatric Review Technique regarding Plaintiff. Tr. at 329–42. Ms. Klohn stated Plaintiff's depression allegation was credible and noted depression secondary to medical problems. Tr. at 341. She concluded that Plaintiff appeared capable of unskilled work in a low-stress environment. *Id.*

On January 27, 2009, Plaintiff underwent a psychological evaluation by John C. Whitley, III, Ph.D. Tr. at 360–65. Dr. Whitley noted Plaintiff could drive, take care of his grandson, feed his chickens and dogs, vacuum, cut the grass, and wash dishes

---

[1] GAF describes an individual's psychological, social and occupational functioning, using a single measure. *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. Text Revision 2000) (DSM-IV-TR).

[2] A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV-TR 34.

although he infrequently performed some activities because of his pain levels. Tr. at 362. After examination, Dr. Whitley diagnosed Plaintiff with depressive disorder secondary to medical issues and assigned him a current GAF score of 59. Tr. at 363. Dr. Whitley opined that Plaintiff would be able to understand and follow multiple step instructions and that Plaintiff's depression would only have a mild impact on Plaintiff's basic work activities. Tr. at 365. Dr. Whitley described Plaintiff as having mild depression and mild pain and noted that Plaintiff reported that his sleeping deficits and lower back pain were his major barriers to employment. *Id.*

C.     The Administrative Proceedings

1.     The Administrative Hearing

a.     Plaintiff's Testimony

At the hearing, Plaintiff testified that he was unable to work because of his back and his depression, which caused insomnia. Tr. at 39. He claimed the length of time he could sit in a chair varied—sometimes not long, sometimes an hour or more. Tr. at 40. He stated he could stand for 30 minutes and walk 1200 feet on a good day. *Id.* He testified he could lift 20 to 30 pounds depending on the day. *Id.* Plaintiff stated he is able to drive and drove himself to the hearing. Tr. at 39.

Plaintiff described his initial back injury in 1998, his subsequent back surgery, and his more recent back injury in 2003. Tr. at 41–42. He testified he received a lump sum settlement of $80,000 or $90,000 two to three years ago related to a worker's compensation claim. Tr. at 39.

Plaintiff claimed that in addition to his back problems, his poor eyesight impedes his ability to work. Tr. at 43. While he stated he feels sure a pair of glasses could satisfy that problem, he testified he has never been to an eye doctor because he cannot afford the deductible. Tr. at 43–44.

Plaintiff stated his emotional problems began following his back surgery in 1998. Tr. at 44. He described himself as an emotional yo-yo and stated that he cries at the drop of a hat. Tr. at 45. He testified that he had seen a therapist twice and intended to see a psychiatrist in the next week or so after the hearing. Tr. at 45, 55.

Plaintiff testified that he lives with his wife and four year old grandson. Tr. at 37–38. He takes care of his grandson. Tr. at 46. He testified he prepares simple meals for himself and his grandson and cuts the grass occasionally. Tr. at 47. He stated he is no longer seeing anyone for his back or for pain. Tr. at 56.

### b.    Plaintiff's Wife's Testimony

Plaintiff's wife testified at the hearing that her husband could not sit, lie down, or walk. Tr. at 49. She testified that her husband watched their grandson while she was at work, but stated that they normally stayed in the house and watched television. Tr. at 50–51. Plaintiff's wife testified she prepared most of the meals and cleaned the house. She said her husband might put dishes in the dishwasher and occasionally put clothes in the washing machine. Tr. at 51. She further stated that her husband was unable to attend church because he could not sit for an extended period of time and estimated he could sit in a chair for about fifteen minutes. *Id.* She described his mental state as very poor and

explained that he had to be hospitalized on several occasions because he got upset and violent by "slinging stuff, hitting and jumping in the car." Tr. at 52–54. She said he is not taking any medication related to his mental state because they do not have money for doctors or medicine. Tr. at 53. She recalled that Plaintiff's worker's compensation claim settled in the last couple of years for $100,000 or $110,000. Tr. at 52.

### c. Vocational Expert Testimony

A Vocational Expert ("VE") reviewed the record and testified at the hearing. Tr. at 56. The VE categorized Plaintiff's PRW as a machine builder or assembler as heavy work. *Id.* The ALJ described a hypothetical individual of Plaintiff's vocational profile with restrictions that limited the hypothetical individual to sit for one hour and stand for 30 minutes, alternating throughout the day; walk for 400 yards on a good day, 100 yards on most days; lift 20 to 30 pounds; occasionally climb stairs, stoop, kneel, crouch, and crawl; never climb ladders, scaffolds or ropes; and perform simple, routine, repetitive tasks. Tr. at 57. The ALJ asked whether there were any jobs in the region or national that the hypothetical person could perform. *Id.* The VE testified to occupations that matched the hypothetical: folder (DOT 369.687-018), light, SVP 2 (3,380 jobs in South Carolina); marker II or labeler (DOT 920.687-126), light, SVP 2 (8,792 jobs in South Carolina); and parking lot attendant (DOT 211.462-010), light SVP 2 (1,518 jobs in South Carolina. *Id.* The VE testified that her responses were consistent with the information provided in the DOT. *Id.*

2. The ALJ's Findings

In his October 30, 2009 decision, the ALJ made the following findings of fact and

conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2009. In order to establish entitlement to disability insurance benefits, the claimant must show disability prior to the date last insured.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 3, 2003 through his date last insured of June 30, 2009 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease and depression (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) but is limited to sitting for no more than one hour and standing for no more than one-half hour with the opportunity to alternate between sitting and standing throughout the day. Further, I find that, on a good day, the claimant is able to walk for up to 400 yards but that, on most days, he can walk for only about 100 yards and lift no more than 20 to 30 pounds. I find that the claimant is limited to only occasion [sic] climbing of ramps and stairs and only occasional stooping, kneeling, crouching or crawling. Additionally, the claimant is best suited for the performance of simple, routine, repetitive tasks.

6. Through the date last insured, the claimant was unable to perform his past relevant work (20 CFR 404.1565).

7. The claimant was born on June 23, 1956 and was 47 years old as of his alleged onset date, or a younger individual under Medical-Vocational Guidelines. The claimant is currently closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not been under a disability, as defined in the Social Security Act, at any time from October 3, 2003, the alleged onset date, through June 30, 2009, the date last insured (20 CFR 404.1520(g)).

Tr. at 24–31.

II. Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1) the ALJ failed to comply with the regulations in advising Plaintiff regarding his right to representation;

2) the ALJ improperly discounted the opinion of Plaintiff's treating physician; and

3) the ALJ wrongly discredited Plaintiff's credibility and subjective symptoms.

The Commissioner counters that substantial evidence supports the ALJ's findings that Plaintiff did not meet the disability requirements of the Act.

A. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further

___

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step.).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g).

The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.      Analysis

1.      The ALJ Complied with HALLEX I-2-6-52

Plaintiff asserts the ALJ failed to comply with the regulations when the ALJ advised him of his right to representation.  [Entry #19 at 10–13].  The Commissioner argues Plaintiff has misinterpreted the regulations and failed to show how he was prejudiced by the alleged failure.  [Entry #21 at 9–11].

Plaintiff cites to the agency's Hearings, Appeals, and Litigation Manual (HALLEX)[4] I-2-6-52 in support of his argument.  The manual provides that if a claimant is unrepresented, "the ALJ should ensure on the record that the claimant has been properly advised of the right to representation and that the claimant is capable of making an informed choice about representation."  HALLEX I-2-6-52.  The manual goes on to offer examples of questions the ALJ could ask an unrepresented claimant on the record, but notes that "[t]he ALJ is not required to recite specific questions."  *Id.*  Plaintiff

---

[4] HALLEX is available at http://www.ssa.gov/OPHome/hallex. Circuits are split as to whether HALLEX is binding on the Commissioner.  The Fourth Circuit has not ruled on the issue.  *See Calhoun v. Astrue*, No. 7:08-619, 2010 WL 297823 (W.D. Va. Jan. 15, 2010) (collecting cases regarding circuit split and noting Fourth Circuit has not ruled on issue).  In *Way v. Astrue*, 789 F. Supp. 2d 652 (D.S.C. 2011), the court found that the Commissioner's failure to follow proffer procedures set forth in HALLEX prejudiced claimant, making remand for compliance with those procedures appropriate. *Cf. Sims v. Astrue*, No. 6:08-4156-MBS, 2010 WL 619239, *15–16 (D.S.C. Feb. 18, 2010) (looking to HALLEX in considering Commissioner's argument that mental competency hearing was not required for claimant who failed to timely seek judicial review and remanding with instruction for the Commissioner to follow HALLEX procedure).  The *Sims* decision did not discuss whether HALLEX has the effect of law. *Id.*

15

nevertheless argues that the ALJ never asked the "required questions stated in HALLEX I-2-6-52." [Entry #19 at 13].

The hearing transcript demonstrates the ALJ told Plaintiff he had the right to have the hearing postponed to give him sufficient time to obtain counsel. Tr. at 34. The ALJ further informed Plaintiff that, although he waited awhile to have his case heard, the hearing would be rescheduled in no more than a month or two if Plaintiff elected to postpone it and seek counsel. *Id.* The record also documents Plaintiff received written notice of his right to representation as part of his hearing notice. Tr. at 93–94.

HALLEX I-2-6-52 does not require the ALJ to ask specific questions as Plaintiff alleges. Rather, the manual requires an unrepresented claimant be advised of his right to counsel and suggests questions that may be useful to that end. The ALJ in this case advised Plaintiff that he was entitled to postpone the hearing in order to retain counsel and further advised him that postponing the hearing would not unduly delay the Plaintiff's case. For these reasons, the undersigned recommends rejecting Plaintiff's argument that the ALJ's failure to properly advise Plaintiff of his right to representation warrants remand.

> 2. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physician

Plaintiff argues the ALJ erred by failing to mention the records of any of Plaintiff's treating physicians and, consequently, by failing to discuss the weight accorded to those opinions. [Entry #19 at 14–16]. Specifically, Plaintiff argues the ALJ

did not properly evaluate the opinion of Dr. Getter. *Id.* at 16. The Commissioner concedes the ALJ did not discuss Dr. Getter's treatment notes, but argues no error occurred because Dr. Getter did not offer a medical source opinion that was entitled to weight as contemplated by the regulations and because the objective findings in Dr. Getter's treatment notes were not inconsistent with the RFC finding. [Entry #21 at 11].

If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. § 416.927(d)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The Commissioner typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 416.927(d)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the

opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d, 171, 176 (4th Cir. 2001). In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence, because its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

To complete the foregoing analysis, a treating physician must first render a medical opinion. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 1527(a)(2).

The parties disagree on whether Dr. Getter provided a medical opinion as contemplated by the regulations. Although Plaintiff argues the ALJ did not consider Dr. Getter's opinion, Plaintiff fails to identify the opinion to which he refers. The Commissioner states the only "opinion" offered by Dr. Getter is a June 2005 record in which he stated Plaintiff was "in no shape to work" and was "in no condition to do any type of work." [Entry #21 at 11; Tr. at 235]. Following a review of the medical records, the undersigned agrees this is the only opinion to which Plaintiff might be referring.

18

Dr. Getter's purported opinion consists of conclusory statements regarding Plaintiff's ability to work. Opinions that a claimant is disabled or "unable to work" are reserved to the Commissioner and are not considered medical opinions. 20 C.F.R. § 404.1527(d). Pursuant to the regulations, the Commissioner will not give any special significance to the source of an opinion on an issue reserved to the Commissioner. *Id.* Because Dr. Getter's statements regarding Plaintiff's ability to work were on an issue reserved to the Commissioner, the undersigned does not recommend reversal and remand on this issue.

Furthermore, the ALJ's failure to discuss Dr. Getter's records, which dealt almost exclusively with maintaining Plaintiff on OxyContin, was harmless error. Even without discussing the records, the ALJ concluded Plaintiff's degenerative disc disease constituted a severe impairment. Tr. at 28. In addition, Dr. Getter's objective findings support the ALJ's RFC conclusion. Dr. Getter's examinations of Plaintiff showed a straight spine and full range of motion in Plaintiff's hips, knees, and ankles, with full motor strength in all groups tested. Tr. at 234, 238, 241, 243. Although Dr. Getter consistently diagnosed Plaintiff with mechanical low back pain and failed back syndrome, Tr. at 241–43, Dr. Getter did not impose any functional limitations on Plaintiff. Finally, Plaintiff's own testimony at the hearing supported the ALJ's RFC determination. Tr. at 28–29, 39–40. For these reasons, the undersigned recommends finding that any error by the ALJ in failing to specifically address Dr. Getter's treatment records was harmless in nature.

Based on the foregoing, the undersigned recommends affirming the Commissioner's decision on this issue.

### 3. The ALJ Did Not Properly Analyze Plaintiff's Credibility and Subjective Symptoms

Plaintiff also argues the ALJ erred in failing to articulate any reasons for concluding Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. [Entry #19 at 16–17]. The Commissioner claims the ALJ clearly gave weight to some of Plaintiff's subjective complaints and properly articulated specific and legitimate reasons for finding Plaintiff not entirely credible. [Entry #21 at 13–15].

Prior to considering a claimant's subjective complaints, an ALJ must find a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause subjective complaints of the severity and persistence alleged. *See* 20 C.F.R. § 404.1529; 20 C.F.R. § 416.929; SSR 96-7p; *Craig*, 76 F.3d at 591–96 (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." 76 F.3d at 594 (internal quotation omitted). Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Id.* at 595. This second step requires the ALJ to consider the record as a whole, including both objective and

subjective evidence, and SSR 96-7p cautions that a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, ¶ 4.

If an ALJ rejects a claimant's testimony about her pain or physical condition, he must explain the bases for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, ¶ 5. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms and the extent to which they limit an individual's ability to perform basic work activities, adjudicators are to consider all record evidence, which can include the following: the objective medical evidence; the individual's ADLs; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses to relieve pain or other symptoms; and any other factors

concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p.

Here, the ALJ properly articulated the two-step analysis outlined above, briefly summarized Plaintiff's testimony, and concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects were not credible to the extent they were inconsistent with the ALJ's RFC assessment.  Tr. at 29.  The ALJ failed to set forth any reasons for his findings on Plaintiff's credibility.  *Id.*  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  An ALJ's failure to say he was discounting a claimant's testimony or why he was doing so results in a gap in the reasoning and warrants remand.  *Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1985).

The Commissioner urges the court to read "the entire decision as a whole" to find the ALJ's specific and legitimate reasons for discrediting Plaintiff's subjective assertion that his impairments were disabling.  *Id.* at 14.  The Commissioner is unable to point to specific reasons for the credibility finding as required by SSR 96-7p.  The ALJ's credibility determination is not sufficiently specific to make clear to the court the weight he gave to Plaintiff's statements and the reasons for that weight.  Consequently, based on the ALJ's failure to articulate the basis for his credibility determination, the undersigned is constrained to recommend that this case be reversed and remanded for further

consideration.  *See, e.g., McQuestion v. Astrue*, 629 F. Supp. 2d 887, 897 n.6 (E.D. Wis. 2009).

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law.  Based on the ALJ's failure to comply with SSR 96-7p, the undersigned recommends this case be reversed and remanded for further administrative proceedings pursuant to 42 U.S.C. § 405(g).  Although not a basis for reversal and remand, the undersigned recommends the Commissioner also be ordered to specifically address Dr. Getter's records upon remand.

IT IS SO RECOMMENDED.

June 28, 2012                                      Shiva V. Hodges
Columbia, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).